UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

JOHN LOACH,  )
            )
    Plaintiff,  )
            )
v.          )   No.: 1:19-CV-00351-TAV-HBG
            )
BOILERMAKER-BLACKSMITH  )
NATIONAL PENSION TRUST,  )
            )
    Defendant.  )

# MEMORANDUM OPINION

This case arises from a dispute under the Employee Retirement Income Security Act ("ERISA"). In short, Plaintiff claims that he is entitled to benefits that were denied to him by Defendant. Now before the Court are a plethora of motions: Defendant's Motions to Dismiss [Docs. 8, 22]; Defendant's Motions to Stay [Docs. 17, 35]; Plaintiff's Objection to the Administrative Record [Doc. 33]; Defendant's Motion for Judgment on the Administrative Record [Doc. 38]; and Plaintiff's Motion for Judgment on the Administrative Record [Doc. 40].

For the reasons that follow, Defendant's first motion to dismiss and two motions to stay [Docs. 8, 17, 35] will be **DENIED AS MOOT**, Defendant's second motion to dismiss [Doc. 22] will be **GRANTED IN PART** and **DENIED IN PART**, Plaintiff's objection to the administrative record [Doc. 33] will be **OVERRULED AS MOOT**, Defendant's motion for judgment on the administrative record [Doc. 38] will be **DENIED**, and Plaintiff's motion for judgment on the administrative record [Doc. 40] will be **GRANTED**.

## I. STANDARD OF REVIEW

Generally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). In order to survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering the motion to dismiss, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). In other words, "[a]ll factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Even so, the Court need not accept a party's "bare assertion of legal conclusions." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citation omitted). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. BACKGROUND

Plaintiff John Loach ("Loach") initiated this ERISA action alleging that he was wrongly denied pension plan benefits due to him by Defendant Boilermaker-Blacksmith

National Pension Trust ("Boilermaker") [Doc. 15 ¶¶ 20-27]. Loach claims that he is the son of now-deceased Paul W. Petty ("Paul"), who was a participant in a Boilermaker pension fund until his death in 2013 [Doc. 39 p. 2; Doc. 41 p. 6]. For present purposes, it appears to be uncontested that if Loach is Paul's son, then Loach is entitled to residual benefits due under Paul's pension plan. As such, Loach provided Boilermaker with three pieces of evidence to establish paternity: (1) a declaration from his mother, Connie Sue Chambers ("Connie"), stating that Paul is Loach's father and she did not have sexual intercourse with anyone other than Paul in the year preceding Loach's birth; (2) results from a DNA test reporting a 97.6% probability that Loach is related to Paul's brother, Robert Leonard Petty ("Robert");[1] and (3) a pleading from Tennessee Probate Court identifying Loach as Paul's son [Doc. 34-1; Doc. 32-1 pp. 11, 39].

Boilermaker repeatedly found this evidence of paternity to be insufficient. On October 17, 2018, Boilermaker sent Loach a letter informing him, in relevant part, that the submitted information was "not acceptable," and he should provide an amended birth certificate [Doc. 32-1 p. 6]. Importantly, Loach contends that it is now impossible for him to obtain an amended birth certificate under Tennessee law because Paul is deceased [Doc. 15 ¶ 9; Doc. 40 p. 1].[2] Hearing nothing from Loach for one year, Boilermaker again reached out on October 24, 2019, to inform him that his proof was deficient and he should

---

[1] Paul himself could not be DNA tested because he was already deceased and buried before the issue of paternity arose.

[2] This statement appears to be true and is unrefuted by Boilermaker. *See* Tenn. Code Ann. § 68-3-305(b)(2)(A).

3

attempt to obtain an amended birth certificate naming Paul as the father [Doc. 32-1 p. 3]. On February 6, 2020, Boilermaker formally rejected Loach's claim because he failed to provide "definitive proof that [he] is the child of [Paul]." [Doc. 23-2 pp. 1-2]. Loach appealed this decision. On June 22, 2020, the Board of Trustees of the pension plan denied his appeal finding that "[s]ufficient proof has not been provided that John Loach is the biological son of Paul Petty." [Doc. 43-1 p. 3].

## III. ANALYSIS

Now before the Court are a plethora of motions: Boilermaker's Motions to Dismiss [Docs. 8, 22]; Boilermaker's Motions to Stay [Docs. 17, 35]; Loach's Objection to the Administrative Record [Doc. 33]; Boilermaker's Motion for Judgment on the Administrative Record [Doc. 38]; and Loach's Motion for Judgment on the Administrative Record [Doc. 40]. These issues have been thoroughly briefed by the parties [Docs. 8, 9, 16, 17, 18, 20, 21, 22, 23, 29, 30, 31, 33, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45]. The Court will proceed in three parts: (A) to address preliminary matters, including the first motion to dismiss, the request for sanctions, the motions to stay, the objection to the record, and ripeness; (B) to consider whether the Amended Complaint raises duplicative claims; and (C) to address the arguments on the merits.

### A. Preliminary Matters

Boilermaker filed a motion to dismiss the Complaint on January 21, 2020 [Doc. 8]. On February 2, 2020, Loach filed an Amended Complaint [Doc. 15]. The filing of the Amended Complaint rendered moot Boilermaker's first motion to dismiss, a point that

4

Boilermaker does not contest [Doc. 18 p. 1].[3] *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (noting that an amended complaint supersedes the original complaint as the legally operative document); *Harness v. Anderson Cnty.*, 3:20-cv-10, 2020 WL 377013, *1 n.1 (E.D. Tenn. Jan. 23, 2020) (acknowledging that, under *Parry*, an amended complaint supersedes the original complaint). Accordingly, Boilermaker's first motion to dismiss [Doc. 8] will be denied as moot.

Next, Boilermaker filed two motions to stay the present proceeding contending that a stay will allow the administrative review process on Loach's claim to be completed [Doc. 17 p. 2; Doc. 35 p. 2]. Additionally, Boilermaker hoped to push back the deadline for filing motions for judgment on the administrative record until after this Court had decided on the pending motions to dismiss [Doc. 35 p. 3]. Since the motions to stay were filed, however, the administrative review process was concluded, the administrative record was added to the docket, and the parties filed their respective motions for judgment on the administrative record [Docs. 32, 38, 40]. As such, no purpose would now be served from staying the case, and these motions will be denied as moot.

---

[3] Boilermaker does, however, request that sanctions be awarded against Loach for his counsel's alleged failure to discuss in good faith the shortcomings of the original complaint [Doc. 18 p. 2]. The Court has the power to award sanctions in the form of attorney's fees in "exceptional cases where the opposing party has acted in bad faith. *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984). Boilermaker has not provided evidence of exceptional circumstances that justify a departure from the "American Rule" of attorney's fees. *See Langnes v. Godfrey*, No. 1:07-CV-266, 2009 WL 1109757, at *2 (E.D. Tenn. Apr. 21, 2009) ("Defendant has not shown this case falls within, or even near, the realm of truly egregious cases of misconduct which warrant the extreme sanction of an award of attorney fees under the bad faith exception to the American Rule.").

5

Furthermore, Loach objected to an omission from the administrative record [Doc. 33 p. 1]. Specifically, he objected to the omission of his mother Connie's declaration, in which she affirms that Loach is Paul's biological child [*Id.*]. Boilermaker did not oppose this objection and supplemented the administrative record with Connie's declaration [Doc. 34 p. 1; Doc. 34-1]. As such, Loach's objection will be overruled as moot.

Finally, Boilermaker has contended throughout this litigation that Loach's claims were not ripe because his request for benefits had not formally been denied by the Boilermaker Board of Trustees [Doc. 9 pp. 4-6; Doc. 23 pp. 8-11; Doc. 31 pp. 4-5; Doc. 39 pp. 6-9]; *see Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (citation omitted)). Loach has concomitantly argued that his claim should be "deemed exhausted" and thereby ripe because Boilermaker failed to provide him with a timely decision on his benefits eligibility [Doc. 30 pp. 1-2; Doc 41. pp. 1-2]; *see* 29 C.F.R. § 2560.503-1(l)(1) ("[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be *deemed to have exhausted* the administrative remedies available under the plan . . . ." (emphasis added)). Since these motions were filed, however, the Board of Trustees rendered their final decision denying Loach any benefits under Paul's pension plan [Doc. 43-1 pp. 1-3]. This claim is no longer contingent upon speculative future events and is therefore ripe.

6

## B. Duplicative Claims

The Amended Complaint alleges two counts—Count I seeks equitable relief for Boilermaker's alleged breach of fiduciary duty, and Count II appeals the denial of benefits [Doc. 15 ¶¶ 13-27]. Boilermaker has contended throughout this litigation that Count I is duplicative of Count II and must be dismissed [Doc. 23 pp. 5-6; Doc. 31 pp. 1-3; Doc. 39 pp. 9-11]. For his part, Loach counters that Boilermaker's procedures are sufficiently inadequate to justify a distinct claim for injunctive relief [Doc. 30 pp. 3-4; Doc. 31 pp. 1-3].

Loach's denial of benefits claim is based on ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and his breach of fiduciary duty claim is premised on ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3). Section 502(a)(1)(B) allows for a civil action specifically "to recover benefits due to [the beneficiary] under the terms of his plan . . . ." Section 502(a)(3) allows for a plan participant or beneficiary "to obtain appropriate equitable relief" for plan violations, including for a breach of fiduciary duty. The Supreme Court has analyzed the interplay between these two forms of relief provided by ERISA. In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court described Section 502(a)(3) as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." 516 U.S. at 512. Placing emphasis on "appropriate," the Court added that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id*. at 515. In *Varity*, the Supreme

7

Court allowed the claim to proceed under Section 503(a)(3) because the plaintiffs would have otherwise had "no remedy at all." *Id*.

The Sixth Circuit has repeatedly had occasion to apply and refine the Supreme Court's guidance from *Varity*. In *Wilkins v. Baptist Healthcare System, Inc*., 150 F.3d 609 (6th Cir. 1998), the Court concluded that the plaintiff could not avail himself of Section 502(a)(3) "[b]ecause [Section 502(a)(1)(B)] provides a remedy for [his] alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled . . . ." 150 F.3d at 615.

The Sixth Circuit reached a different conclusion in *Hill v. Blue Cross & Blue Shield of Michigan*, 409 F.3d 710 (6th Cir. 2005). In *Hill*, the Court considered a class action that sought both individual-benefits payments and plan-wide injunctive relief. 409 F.3d at 718. Distinguishing the case from *Wilkins*, the Sixth Circuit emphasized that the Section 502(a)(3) claim "asserted defects in *plan-wide* claims-handling procedures," concluding that an award of benefits would not sufficiently make the plaintiffs whole in light of "an allegedly improper methodology for handling *all* of the Program's emergency-medical-treatment claims." *Id*. (emphasis added).

Finally, in *Rochow v. Life Insurance Co. of North America*, 780 F.3d 364 (6th Cir. 2015), the Sixth Circuit, sitting *en banc*, discussed the interplay between *Varity*, *Wilkins*, and *Hill*, again emphasizing the basic holding of *Varity*: absent a showing that the remedy under Section 502(a)(1)(B) is inadequate to make the plaintiff whole, "there is no trigger for 'further equitable relief' under *Varity*." 780 F.3d at 371-72. The Sixth Circuit then

8

addressed the friction between *Wilkins* and *Hill*, characterizing *Hill* as an exception to *Wilkins* when there is a need to remedy "systemic plan-wide problems that pose[] a potential for future injury." *Id*. at 373. In the case before it, the plaintiff was not permitted to proceed under Section 502(a)(3) because his injury due to the denial and withholding of benefits was remediable by an application of Section 502(a)(1)(B). *Id*. at 375.

In both Counts I and II of the Amended Complaint, Loach seeks an award of benefits that Boilermaker has denied him.[4] His injury is therefore the denial of these benefits. In support of this goal, he makes several interrelated arguments—Boilermaker did not render a timely decision, did not adequately inform him how to perfect his claim, and did not inform him of the standard of proof under which he must establish paternity [Doc. 30 p. 4]. While these arguments do criticize the procedure by which Boilermaker handled Loach's claim, they do not allege *plan-wide* defects in Boilermaker's claim-handling procedures as in *Hill*. To the contrary, this case is not a class action nor is there any discussion whatsoever about "allegedly improper methodology for handling all of [Boilermaker's] claims" or "systemic plan-wide problems that pose[] a potential for future injury." Rather, Loach suffers from a single injury—he was denied benefits to which he believes he is entitled. If he is awarded those benefits under Section 502(a)(1)(B), then he will be made whole again—i.e., it will be as if his benefits were granted in the first instance. Loach repeatedly opines that "any benefits recovered by Loach, plus the prejudgment interest that

---

[4] The Amended Complaint clearly states, "Plaintiff has been denied benefits, and Plaintiff is entitled to prejudgment interest and *appropriate equitable relief awarding him benefits*." [Doc. 15 ¶ 19 (emphasis added)].

9

*may* be awarded on remand, are inadequate to make him whole." [Doc. 41 p. 3]. However, he never elaborates how or why this is so. *See Rochow*, 780 F.3d at 375 ("The purpose behind ERISA continues to be remedial, and [plaintiff's] injury was remedied when he was awarded the wrongfully denied benefits and attorney's fees—as potentially supplemented by award of prejudgment interest, still to be determined."). As such, Loach's claim for breach of fiduciary duty under Section 502(a)(3) is duplicative of his denial of benefits claim under Section 502(a)(1)(B). *See id*. at 373 ("Because [plaintiff] has an adequate and effective remedy for this injury under § 502(a)(1)(B), he is not also entitled to relief under § 502(a)(3)."). Accordingly, Count I of the Amended Complaint will be dismissed.[5]

### C. Merits

Finally, this Court will turn to the merits of Loach's denial of benefits claim under Section 502(a)(1)(B). Despite the complexity generated by the parties' seven pending motions and the standards of ERISA review, the facts of this case are quite simple. Loach claims that he is entitled to benefits held by Boilermaker because he is the son of Paul, a participant of the pension plan. Boilermaker considered the evidence of paternity and

---

[5] Sister courts from this circuit have recently reached the same conclusion under similar circumstances. *See Corey v. Sedgwick Claims Mgmt. Servs.*, 165 F. Supp. 3d 672, 678 (N.D. Ohio 2016) ("The limited exception in *Hill* is inapplicable in this case because plaintiff is not pursuing injunctive relief for systemic plan-wide problems that pose a potential for future injury."); *Rishell v. Standard Life Ins. Co.*, No. 1:08-cv-1198, 2009 WL 395884, at *7 (W.D. Mich. Feb. 13, 2009) ("In short, [plaintiff] has not attempted to show that [Section] 502(a)(1)(B), is unavailable to her. Nor has she attempted to show that success on her claim under the provision would not adequately remedy [defendant's] alleged wrongs . . . .").

10

concluded that Loach had not carried his burden to establish Paul's paternity. Loach now seeks review of that decision.

The standard of review under ERISA is determined by the terms of the plan. If the plan provides the plan administrator with discretion to determine who is eligible for benefits, then the district court is charged with reviewing the administrator's decision under arbitrary and capricious review. *Fura v. Fed. Express Corp. Long Term Disability Plan*, 534 F. App'x 340, 342 (6th Cir. 2013) (citing *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005)). On the other hand, if the plan does not allocate that discretion to the plan administrator, then the district court applies *de novo* review. *Shaw v. AT&T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 546 (6th Cir. 2015). The Boilermaker pension plan document provides in relevant part: "**Trustees' Authority**. The Trustees shall have complete discretion to construe, interpret, and apply all terms and provisions of this Plan document and the Trust Agreement in resolving any dispute in accordance with these rules, including the discretion to determine the standard of proof required." [Doc. 32-5 p. 94]. This language clearly gives the Boilermaker Trustees discretion to interpret the plan and determine who is eligible for benefits. This Court will therefore proceed under arbitrary and capricious review.

"Under the arbitrary-and-capricious standard, we must uphold the plan administrator's decision if it is 'the result of a deliberate, principled reasoning process' and 'supported by substantial evidence.'" *Shaw*, 795 F.3d at 547 (quoting *DeLisle v. Sun Life Assurance Co. of Can.*, 558 F.3d 440, 444 (6th Cir. 2009)). While this standard is quite

11

deferential, the district court's review is not merely a "rubber stamp of the administrator's decision." *Guest-Marcotte v. Life Ins. Co. of N. Am.*, 730 F. App'x 292, 301 (6th Cir. 2018) (internal quotation marks omitted) (citing *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007)). Finally, "[t]he court reviews only the evidence available to the administrator at the time it made the final decision." *Corey*, 858 F.3d at 1027.

The plan provides that its participants or beneficiaries must furnish "any information of proof *reasonably required* to determine his benefit rights." [Doc. 43-1 p. 2 (emphasis added)]. Loach provided Boilermaker with several pieces of evidence to support his claim that Paul was his father. First, Loach submitted a declaration from his mother attesting that Paul is Loach's father and she did not engage in sexual intercourse with any other person in the year preceding Loach's birth [Doc. 34-1]. Second, Loach submitted a DNA test showing a 97.6% probability that Loach is related to Paul's brother, Robert, and therefore, is also related to Paul [Doc. 32-1 p. 11]. As noted, Paul's DNA could not be tested because he was already deceased. Loach has further indicated that an exhumation for DNA purposes would be cost-prohibitive given the relatively small amount of disputed benefits[6] [Doc. 41 p. 6]. Third, Loach submitted a pleading from the Tennessee Probate Court stating that Loach is Paul's son [Doc. 32-1 p. 39].

Boilermaker has maintained throughout this process that this evidence was insufficient to establish paternity—"[Loach] never submitted anything but attenuated, circumstantial documentation of his relationship to [Paul]." [Doc. 39 p. 12]. For instance,

---

[6] The amount in controversy appears to be roughly $15,000 [Doc. 29 p. 2].

12

Boilermaker suggests that because the DNA test only addresses Loach's relationship to Paul's brother, Robert, there is still a possibility that Loach was actually fathered by a sibling other than Paul [Doc. 39 p. 13].  Boilermaker next emphasizes that the Tennessee Probate Court document was a *pleading*, not a court determination of paternity [Doc. 39 p. 13].  For its part, Boilermaker supports its conclusion by noting that Paul's sister, Carolyn Faye Higdon ("Carolyn"), has consistently maintained that Paul had no children [Doc. 32-3 p. 20].

Ultimately then, what Boilermaker weighed when making its determination was, on one side, Connie's uncontested testimony that Paul was Loach's father and a DNA test confirming to a high degree of certainty that Loach is related to Paul's family.  On the other side, Carolyn was simply *unaware* that Paul had any children.  As such, there is significant, unrefuted evidence in the administrative record that Paul was Loach's father.  Even so, Boilermaker disregarded the declaration of Loach's mother with no explanation whatsoever.  A defendant generally need not "discuss every piece of evidence in the record," but it must still make a determination that is "consistent with the quantity and quality of the medical evidence that is available on the record."  *Fura*, 534 F. App'x at 343 (internal quotation marks omitted) (quoting *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381-82 (6th Cir. 2005)).  Next, Boilermaker attempts to explain away the DNA test with speculation that *maybe* Loach was fathered by one of Paul's brothers [Doc. 42 p. 6].  That statement, however, is nothing more than bald supposition, completely unsubstantiated by

13

evidence in the record. Finally, Carolyn's statement that Paul had no children is not affirmative evidence that Paul had no children; rather, this statement merely goes to her lack of knowledge.[7] On this point, it is important to note how Boilermaker became aware of Loach in the first place. Boilermaker was informed by Charles Petty Jr. ("Charles")[8] that Paul had a biological child, although Charles could not provide this child's name or address [Doc. 32-4 p. 2]. Carolyn later called Boilermaker to again insist that Paul had no children, but inexplicably also stated that Paul's supposed child might be the son of Connie Chambers, i.e., John Loach [Doc. 32-2 p. 11]. Thus, the reason that Boilermaker contacted Loach in the first place is because Carolyn indicated that he could be Paul's biological son.

Boilermaker has repeatedly concluded that Loach failed to provide "sufficient proof" to establish paternity [Doc. 43-1 pp. 1, 3]. Loach, however, has produced substantial evidence that he was the son of decedent Paul W. Petty in the form of Connie's declaration, corroborated by genetic testing showing to near-certainty that Loach is related to Paul's brother. Although Boilermaker has deemed this evidence insufficient, the record is completely lacking in any evidence that Paul is *not* Loach's father. Even the indication by Carolyn that Paul had no children is belied by the fact that she was the one who

---

[7] Furthermore, statements made in the sibling's Beneficiary Declaration Forms have little evidentiary value. As noted by Boilermaker, "many, if not all, of the Beneficiary Declaration Forms lacked a complete list of Participant's siblings . . . ." [Doc. 39 ¶ 11].

[8] It is unclear in the record what the relation is between Paul and Charles, although Charles is presumably one of Paul's relatives.

14

suggested to Boilermaker in the first place that Loach could be Paul's son.[9] This information, further coupled with the fact that Charles also stated that Paul *did* have a son, strongly supports the conclusion that Paul had a son and that son is Loach. Boilermaker simply has not provided *substantial evidence* to the contrary, nor any evidence for that matter calling into question Connie's declaration. While Boilermaker speculated that another of Paul's brothers *could be* Loach's father, there is absolutely nothing in the record to support this suggestion. Because Boilermaker summarily discounted Loach's evidence with only mere supposition and failed to offer substantial evidence to support its conclusion, Boilermaker's determination that Loach is not Paul's son was arbitrary and capricious.[10]

While arbitrary and capricious review is deferential, Courts do not shy away from reversal when necessary. *See, e.g.*, *Guest-Marcotte*, 730 F. App'x at 301 (finding that the defendant's decision was arbitrary and capricious under ERISA because the defendant

---

[9] Carolyn's statement is also further undermined because she is clearly an interested party. In a note to Boilermaker, she stated: "This has been going on for over 4 years. Someone needs to put up a Birth Certificate or shutup." [Doc. 32-2 p. 9]. If this demand for an amended birth certificate originated with Carolyn, it would further undermine Boilermaker's decision-making process. Further, Boilermaker's apparent adoption of Carolyn's position requiring an amended birth certificate is arbitrary and capricious given that Tennessee law precluded amendment of Loach's birth certificate after Paul's death, as noted above.

[10] Furthermore, while the plan provides Boilermaker with discretion to set the standard of proof required [Doc. 32-5 p. 94], there is case law to support Loach's argument that the standard of proof should have been a preponderance of the evidence. *See Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 700 (6th Cir. 2014) (citation omitted); *James v. Liberty Life Assurance Co. of Bos.*, 582 F. App'x 581, 586 (6th Cir. 2014); *Ex'rs of Est. of Wallner v. Unum Life Ins. Co. of Am.*, 221 F. Supp. 3d 967, 973 (N.D. Ohio 2016).

15

discounted the plaintiff's claims of disabling pain without conducting a physical examination of her); *Shaw*, 795 F.3d at 547 (finding that the defendant's decision was arbitrary and capricious in large part because the defendant largely ignored evidence in the record favorable to plaintiff); *Corey*, 858 F.3d at 1028 ("The Administrator's response leans heavily on the plan's grant of interpretive discretion. But the record leaves us guessing as to how the Administrator interpreted the plan[] . . . ."). As discussed above, this is such a case where reversal is required.

The Court must determine the appropriate remedy. Boilermaker contends that if this Court finds for Loach, the proper remedy is remand back to the fund rather than granting Loach's request for benefits [Doc. 39 p. 13]. "When a benefits plan is found to have acted arbitrarily and capriciously, [courts] have two options: award benefits to the claimant or remand to the plan administrator." *Shaw*, 795 F.3d at 551. "Remand to the plan administrator is appropriate 'where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled.'" *Fura*, 534 F. App'x at 343 (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006)).

In the present case, an award of benefits is appropriate. As outlined in detail, Loach has provided unrefuted evidence that Paul is his father. Without any evidence to the contrary, Loach has established that he is entitled to benefits under the terms of the plan. As this point, remanding this case for further review would serve no other purpose than to further delay this lengthy dispute over a relatively modest sum. *See Shaw*, 795 F.3d at 551

16

("Remand here would be a useless formality. Although the plan's decision-making process was unquestionably flawed, it is also clear that [plaintiff] was denied benefits to which he is entitled.").

## IV. CONCLUSION

For the reasons set forth above,

1. Defendant's first motion to dismiss and two motions to stay [Docs. 8, 17, 35] will be **DENIED AS MOOT**;

2. Defendant's second motion to dismiss [Doc. 22] will be **GRANTED IN PART** and **DENIED IN PART**;

3. Plaintiff's objection to the administrative record [Doc. 33] will be **OVERRULED AS MOOT**;

4. Defendant's motion for judgment on the administrative record [Doc. 38] will be **DENIED**; and

5. Plaintiff's motion for judgment on the administrative record [Doc. 40] will be **GRANTED**, and he is to be awarded benefits in accordance with the terms of the plan.

A separate order will follow. The Clerk will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE